IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SID L. KELLY, | : | CIVIL ACTION |
|         Plaintiff, | : | NO. 05-CV-4289 |
| | : | |
|     v. | : | |
| | : | |
| HARCUM COLLEGE and | : | |
| LEE NIKOLAI | : | |
|         Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S.J.                                                                                          March 6, 2007

Presently before the Court is Defendants Harcum College and Lee Nikolai's Motion for Summary Judgment and Plaintiff Sid Kelly's Response thereto. For the reasons set forth below Defendants' Motion is granted as to Count I and denied as to Count II. Count II, however, is dismissed pursuant to 28 U.S.C. § 1367(c)(3).

### I.  FACTUAL AND PROCEDURAL HISTORY

Harcum College ("Harcum") is a two-year college located at 750 Montgomery Avenue, Bryn Mawr, Pennsylvania. Harcum's campus consists of nine buildings and several acres. (Affidavit of Joseph Katz, Def. Ex. C at ¶4). The Facilities Department is responsible for maintenance, housekeeping and grounds. (Id. at ¶4). At all times relevant, the Facilities Department had 12 employees. (Id. at ¶7). Until May, 2004, the Facilities Department was supervised by a single individual, Michael Troupe. (Id. at ¶8). Following Troupe's resignation,

the Facilities Department had two co-directors, Mark Sickinger and Nikolay Karpalo,[1] both of whom are white.  (Id. at ¶7).

The Plaintiff, Sid Kelly, claims that he was discriminated against by not being promoted to the position of co-director.  Mr. Kelly is a 42 year old African-American.  (Dep. of Sid Kelly, Def. Ex. E at 15).  He graduated from high school in 1982.  (Id. at 22).  Later, Plaintiff attended Delaware Valley School of Trades, where he studied to become an electrician but did not receive any degree or certification.  (Id. at 22-24).

Prior to working for Harcum, Plaintiff held a number of jobs, mainly janitorial positions.  Following high school, Mr. Kelly worked for 1 ½ years at Super Fresh supermarket as a utility clerk, where his responsibilities included stripping and waxing the floors, as well as some stock work.  (Def. Ex. E at 27).  Mr. Kelly also worked at Einstein Medical Center and, later the Community College of Philadelphia, doing janitorial work and stripping, waxing and buffing the floors.  (Id. at 50-53).  For three years, Plaintiff worked at Philadelphia College of Pharmacy and Science ("PCPS") in a similar position to the one he later held at Harcum.  (Id. at 44-45).  At PCPS, Plaintiff stripped, waxed and buffed floors, cleaned lavatories, and worked for special services moving furniture for events held at the school.  (Id. at 45).  Finally, immediately prior to starting at Harcum, Plaintiff worked for nine months at Priority Air Express doing stock work in shipping and receiving.  (Id. at 29).

In some of Plaintiff's recent employment history, he trained and supervised other employees.  At S & K Janitorial, in addition to stripping and waxing floors, Mr. Kelly trained other employees.  (Id. at 37).  For two years, Plaintiff worked for Bill Dry Corporation doing

---

1. Karpalo is misidentified in the complaint as Lee Nikolai.  (Def. Memo. at 2; Pl. Memo. at 1).

2

shipping and receiving, mixing cement products and janitorial work.  (Id. at 31-34).  Here, he also served as the night supervisor and was responsible for safety and locking up.  (Id. at 33).

On February, 19, 2001, Plaintiff began working as a housekeeper in the Facilities Department at Harcum.  (Def. Ex. E at 59).  He was assigned to a dormitory and another building, where his responsibilities included buffing, stripping, and waxing the floors, as well as housekeeping and custodial duties.  (Id. at 60).  From the time Plaintiff began working at Harcum until May, 2004, his supervisor was Michael Troupe, who is black.  (Id. at 74, 89).

While working at Harcum, Plaintiff received three Written Warning Notices ("Warnings") for unsatisfactory job performance.  (Def. Ex. E at 85-97; Warnings, Def. Ex. F.).  Mr. Kelly was reprimanded on the following dates: (1) September 26, 2003, for playing pool during working hours; (2) October 30, 2003, for tardiness; and (3) October 31, 2003 for failure to complete scheduled work.  (Def. Ex. F).  He grieved the warnings for tardiness and failure to complete scheduled work.  (Def. Ex. E at 86-88, 96-97).  However, Ronda Shropshire, Harcum's Director of Human Resources, upheld the two warnings in grievance decisions dated November 18, 2003.  (Def. Ex. G)  No further disciplinary action was taken.  (Id.; Def. Ex. E at 97).

In May, 2004, after Michael Troupe left his position as Director, Joseph Katz[2] held a staff meeting with the employees of the Facilities Department to inform them that Harcum was looking for an outside company to run the department.  (Def. Ex. E at 164).  During this meeting, Plaintiff raised his hand and said, "Don't you guys think you would come out cheaper if you hire some of us that's within these departments because I know there's a few of us that may

---

2.  Mr. Katz is Director of Finance and Administration for Harcum College and responsible for overseeing the Facilities Department.  (Def. Ex. C. at ¶1).

3

be qualified for these positions? I know me personally, I know housekeeping, I've been dealing with this." (Id.)  In response, Mr. Katz told Mr. Kelly that, no, Harcum was going to look outside the college to fill the position. (Id.). However, the individuals eventually named as co-directors, Mr. Karpalo and Mr. Sickinger, were both promoted from within Harcum.[3]

Ms. Shropshire, the Director of Human Resources, testified that Harcum posted the Director of Facilities position both on a trade web-site and in Harcum's monthly electronic newsletter. (Shropshire Dep., Def. Ex. I at 29-31). Ms. Shropshire also testified that Harcum usually posts a hard copy of the newsletter near time clocks for employees without access to a computer. (Id. at 31). However, neither Plaintiff nor other employees in the Facilities Department remember seeing such a posting. Anthony Holloway, a maintenance mechanic, testified that he never had an opportunity to apply for the co-director position, but that he would have applied if Harcum had posted the opening. (Holloway Dep., Pl. Ex. 1 at 13, 23). Mark Sickinger, who eventually was promoted to co-director, also never saw a posting for the position. (Sickinger Dep., Pl. Ex. 2 at 23).

About three weeks after Mr. Troupe's resignation, Mr. Karpalo approached Ms. Shropshire and Mr. Katz to inform them of his interest in the director position. (Karpalo Dep., Def. Ex. M at 11). Mr. Karpalo knew the position was available because despite the fact that Mr. Troupe left, Harcum had not yet named a replacement. (Id.). The College approached Mr. Sickinger about the position. (Def. Ex. J at 20). During this time, Mr. Kelly took some of his

---

3.  Mr. Sickinger testified that he started working at Harcum in 2002. (Def. Ex. J at 32). From Mr. Karpalo's resume and testimony, his exact start date at Harcum is not clear. However, Anthony Holloway, an employee in the Facilities Department, testified that Mr. Karpalo started working at Harcum prior to Mr. Sickinger. (Pl. Ex. 1 at 13-14).

personal vacation days that he had accumulated. (Def. Ex. E. at 166-67). A few days after Plaintiff returned from vacation, the college called a staff meeting where Mr. Sickinger and Mr. Karpalo were introduced as co-directors of the Facilities Department. (Def. Ex. E at 168). Although Plaintiff was disappointed and hurt, he did not complain to Mr. Katz or Ms. Shropshire about not being chosen for the position. (Id. at 174).

On August 11, 2005, Plaintiff filed a complaint in federal court alleging that Harcum discriminated against him in violation of 42 U.S.C. § 1981. (Docket No.1). The complaint included a claim for defamation against both Harcum and Mr. Karpalo. On June 19, 2006, Defendants filed this motion for summary judgment. (Docket No. 8). Plaintiff's response followed on July 14, 2006. (Docket No. 10).

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Because a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

After the moving party satisfies its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256-57. Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

### III. DISCUSSION

#### A. Discrimination Claim

In Count I of Plaintiff's complaint, he alleges that Harcum discriminated against him based on his race in violation of 42 U.S.C. § 1981. After a careful review of the record, and drawing all inferences in the light most favorable to Plaintiff, it is clear that there is "no genuine issue of material fact" and Defendant Harcum College is entitled to judgment as a matter of law on Count I of Plaintiff's complaint. FED. R. CIV. P. 56(c). Courts have held that the legal standard for a § 1981 claim is identical to the standard in a Title VII claim. Roebuck v. Drexel University, 852 F.2d 715, 726 (3d Cir. 1988); Harris v. SmithKline Beecham, 27 F. Supp.2d 569, 576 (E.D. Pa. 1998) (citation omitted). Therefore, the Court will examine Plaintiff's claim referencing both analyses interchangeably.

6

Plaintiff's discrimination claim is governed by the three step burden-shifting framework developed in McDonnell Douglas Crop. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas model, the plaintiff is first required to set forth sufficient evidence to establish a *prima facie* case. To establish a *prime facie* case of racial discrimination for a failure to promote, the plaintiff must show, in addition to his protected-class status, that he: (1) applied for and had the requisite qualification for an available job; (2) was rejected for that position; and (3) after Plaintiff's rejection, Defendant continued to seek applications from individuals with Plaintiff's qualifications. Bray v. Marriot Hotels, 110 F.3d 986, 990 (3d Cir. 1997) (citing McDonnell Douglas, 411 U.S. at 802). Though a Plaintiff must have applied for the position to satisfy a *prima facie* case, courts have not interpreted this requirement rigidly. If a plaintiff has not submitted a formal application for a position, he may still make out a claim, "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1997).

Once a *prima facie* case is established, the second stage shifts the burden of production to the defendant, who must produce evidence sufficient to support a finding that there was a legitimate, nondiscriminatory reason for the employment action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993). Summary judgment should be granted for the plaintiff if the defendant is unable to satisfy this burden. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). If the defendant does satisfy this burden, the third stage shifts the burden back to the plaintiff, and "the plaintiff may survive summary judgment or judgment as a matter of law by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 1109 (citing Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994)).

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

Fuentes, 32 F.3d at 765. In other words, "the question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." Keller, 130 F.3d at 1109 (quoting Carson v. Bethlehem Steel Corp., 83 F.3d 157, 159 (7th Cir. 1996)).

Here, Plaintiff fails to establish a *prima facie* case for failure to promote because he did not make a reasonable attempt to convey his interest in the position to the employer. Plaintiff's sole attempt to express his interest was at the meeting where Mr. Katz explained that Harcum was considering hiring an outside firm to run the Facilities Department. In response to Mr. Katz's announcement, Mr. Kelly said "Don't you guys think you would come out cheaper if you hire some of us that's within these departments because I know there's a few of us that may be qualified for these positions? I know me personally, I know housekeeping, I've been dealing with this." From Plaintiff's statement, it is not entirely clear whether he wished to be considered for the position or was merely inquiring whether Harcum would consider hiring someone from within the department. Moreover, Mr. Kelly made no attempt to follow-up with either Mr. Katz or Ms. Shropshire.

Plaintiff argues that his failure to formally apply for the position of co-director should not bar his claim in light of Harcum's failure to post the job opportunity and communicate the opportunity to potential candidates, such as Mr. Kelly and Anthony Holloway. This argument is in tension with Plaintiff's own testimony in which he indicated that he was both aware of and expressed an interest in the position. Mr. Kelly testified that he learned about the opening by virtue of the fact that Mr. Troupe had resigned and through the subsequent staff meeting led by Mr. Katz. (Def. Ex. E at 163-64). Furthermore, it was at this staff meeting where Plaintiff claimed he expressed his interest in the position by raising his hand and suggesting that Harcum look within the department to fill the vacancy. (Id.).

Mr. Holloway, another African-American employee present at that staff meeting, did not remember anyone raising the issue of promoting from within at the meeting. (Pl. Ex. 1 at 16). Mr. Holloway further testified that had he known about the opening, he would have applied. (Id. at 13, 23). This testimony, coupled with Mr. Sickinger's testimony that he never saw a posting for the position, supports an inference that Harcum did not post the opening or otherwise make employees aware of the opportunity for promotion. For the purposes of summary judgment, all inferences must be drawn in favor of the Plaintiff. Thus, this Court will assume that Plaintiff was not aware of the opening and proceed through the McDonnell Douglas analysis.

As part of his *prima facie* case, Plaintiff must also show that he was qualified for the position. Harcum has not produced evidence identifying the qualifications for the position beyond Mr. Karpalo's and Mr. Sickinger's testimony as to their respective responsibilities as co-directors. Mr. Sickinger testified that his position included the following responsibilities: prioritizing work orders, assigning staff, time sheets, discipline, scheduling, and HVAC work.

(Def. Ex. J at 13-17).  Mr. Sickinger was responsible for ground maintenance and plumbing, while Mr. Karpalo was responsible for housekeeping and electric.  (Def. Ex. M at 17).  Both co-directors covered for the other if he were absent or on vacation.  (Def. Ex. J at 25-26).

Plaintiff testified that he did not believe that he was qualified to be director of maintenance and that he "wasn't interested in directing the maintenance department." (Def. Ex. E at 160, 163).  However, Plaintiff did feel qualified for the co-director position that focused on housekeeping, i.e. Mr. Karpalo's position.  (Id. at 160, 178).  Without evidence from Harcum College identifying the exact qualifications of the position and in light of Plaintiff's testimony, for the purposes of summary judgment, this Court will assume that Plaintiff was qualified for the co-director position and proceed through the McDonnell-Douglas analysis.

Once a *prima facie* is established, the burden shifts back to the Defendant to present a legitimate, non-discriminatory reason for its refusal to promote Plaintiff.  In this case, Harcum asserts that both Mr. Sickinger and Mr. Karpalo were more qualified than the Plaintiff.  Unlike Mr. Kelly, who has a high school diploma and no advanced degrees or certifications, Mr. Karpalo has a BS in Mathematics, an AS in Electrical Engineering, and an AS in Computer Science.  (Def. Ex. M at 44; Resume for Nicolay Karpalo, Def. Ex. L).  Mr. Sickinger has Occupational Health and Safety certifications, as well as advanced HVAC certifications from Delaware Valley.  (Def. Ex. J at 36).

In addition, Mr. Sickinger and Mr. Karpalo have more extensive managerial experience than Plaintiff.  Plaintiff's supervisory experience was limited to serving as night supervisor responsible for safety and locking up during his two year tenure at Bill Dry Company and training other employees to strip and wax floors at S & K Janitorial.  On the other hand, Mr.

Karpalo served as the president of an insurance company with eight employees in Kiev, Ukraine for a one year stint. (Def. Ex. L). Following that position, for two years, Mr. Karpalo was president of a technology company with 78 employees, also located in Kiev. (Id.). Mr. Sickinger gained supervisory experience while doing general construction work at Pottstown Contractors. (Def. Ex. K).

Once the Defendant articulates a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to show that the real reason for Defendant's decision was discrimination. In this case, Plaintiff failed to produce any evidence that Harcum's articulated reason for promoting Mr. Sickinger and Mr. Karpalo over Plaintiff, that they were more qualified, was pretextual.[4] Plaintiff admitted that Harcum had reasons other than race for hiring Mr. Sickinger, testifying that "Mark knew about plumbing and know about contractors because he had his own business. And he did do work for Harcum with that business. . .he knows about, you know, contractors." (Def. Ex. E at 178). Plaintiff also testified that "Nikolai [Karpalo] is a computer guy" and "[t]he reason why they picked Nikolai is because they picked Mark [Sickinger], and they came out cheaper." (Id. at 178-79).

In addition, while it may be true that other employees[5] worked at Harcum longer than Mr. Karpalo or Mr. Sickinger, both co-directors had extensive experience in the field. Mr.

---

4. In fact, evidence submitted by both parties indicates to the contrary. Affidavits submitted by the Defendants show that other African-American employees did not feel discriminated against nor ever witnessed any discrimination by Harcum. See Aff. of Shawn Riley, Def. Ex N at ¶2; Aff. of Exford Henry, Def. Ex O at ¶2; Aff. of Emmett Buford, Def. Ex. O at ¶2. Anthony Holloway testified that he never felt treated any differently because he was African-American. (Pl. Ex. 1 at 19). Furthermore, during Ms. Shropshire's three year tenure as Director of Human Resources, she never received any complaints from Harcum employees alleging racial discrimination. (Def. Ex. I at 6-7).

5. Plaintiff specifically refers to Anthony Holloway, who worked for Harcum for roughly seven years and "trained" Karpalo when he came to Harcum. (Def. Ex. H at 12-13).

Sickinger had 17 years of maintenance experience.  (Def. Ex. K).  In addition to Mr. Karpalo's relevant experience in the Ukraine, he worked as a maintenance mechanic for four years in the United States prior to being named co-director.  (Def. Ex. L).  Furthermore, Plaintiff was reprimanded with written warnings three times while working for Harcum, while neither Mr. Karpalo nor Mr. Sickinger were subject to any discipline while employed by Harcum.

Because Plaintiff has failed to offer evidence from which a reasonable factfinder could disbelieve Harcum's articulated reason for promoting Mr. Sickinger and Mr. Karpalo over the Plaintiff, summary judgment in favor of Defendant Harcum College is appropriate on Count I of Plaintiff's complaint.

### B.  Defamation Claim

Count II of Plaintiff's complaint is a defamation claim.  The only basis for the court's jurisdiction of this state law claim is supplemental jurisdiction, as set forth in 28 U.S.C. § 1367.   Under § 1367(a), in any case where the district court has original jurisdiction, it shall have supplemental jurisdiction over all other claims that are so related that "they form part of the same case and controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  However, under § 1367(c), "[t]he district courts may decline to exercise jurisdiction over a claim," if "the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  This decision is left to "the sound discretion of the district court" which should focus on whether the dismissal of the pendent claim best serves the principles of judicial economy, convenience, fairness and comity." Annulli v. Pannikar, 200 F.3d 189, 202 (3d Cir. 1999), abrogation on other grounds recognized by Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000); see also Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d Cir.

2000) (explaining that "[t]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.")

Here, Count I of Plaintiff's complaint provides the basis for federal jurisdiction and that claim has been dismissed, leaving only a state law claim for defamation. Judicial economy and convenience favor Plaintiff pursuing this claim in state court. Plaintiff can use any evidence obtained to the same extent in state court as he would here. <u>Wheeler v. City of Philadelphia</u>, 367 F.Supp.2d 737, 749 (E.D. Pa. 2005) (citing <u>Annulli</u>, 200 F.3d at 203). Fairness concerns are not implicated since Plaintiff risked dismissal of his state law claim when he filed in federal court and invoked our discretionary supplemental jurisdiction power. <u>Id.</u> Moreover, comity favors permitting a Pennsylvania court to hear the state law claim. <u>Id.</u>

Thus, under 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's defamation claim. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| SID L. KELLY, | | : | CIVIL ACTION |
| | Plaintiff, | : | NO. 05-CV-4289 |
| | | : | |
| v. | | : | |
| | | : | |
| HARCUM COLLEGE and | | : | |
| LEE NIKOLAI | | : | |
| | Defendants. | : | |

**ORDER**

AND NOW, this 6th day of March, 2007, upon consideration of Defendants Harcum College and Lee Nikolai's Motion for Summary Judgment (Docket No. 8) and Plaintiff Sid Kelly's response thereto (Docket No. 10), it is hereby **ORDERED** that the Defendants' motion is **GRANTED in part** and **DENIED in part**. Defendants' motion is **GRANTED** as to Count I of Plaintiff's complaint**,** and judgment is entered in favor of Defendant Harcum College and against Plaintiff Sid Kelly. Defendants' motion is **DENIED** as to Count II, but is **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3).[1]

This case is **CLOSED**.

BY THE COURT:

*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.

---

1. The parties attention is directed to 28 U.S.C. § 1367(d) which provides as follows:

    The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.